EL PUEBLO DE PUERTO RICO, apelado, *v.* WILLIAM CALVIÑO CEREIJO y ÁNGEL E. CALDERÓN ORTA, apelantes.

*Número:* CR-79-17        *Resuelto:* 2 de febrero de 1981

*Heyda McClin, Carmen Ana Rodríguez Maldonado, Enrique Vélez Rodríguez* y *Rafael Santiago Becerra,* de la Sociedad para la Asistencia Legal, abogados de los apelantes; *Héctor A. Colón Cruz, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal en cuanto a las partes I y III; en cuanto a la parte II, emitió su propia opinión a la cual se unen los Jueces Asociados Señores Torres Rigual, Díaz Cruz y Negrón García.

El 28 de julio de 1978 los apelantes asaltaron un colmado llamado "Tu Amigo" sito en la Urbanización Caparra Heights, en el área metropolitana de San Juan. Amenazaron a la dueña y a la cajera del establecimiento con una pistola y con una escopeta de dos cañones recortados, arma muy peligrosa que se prepara y se utiliza deliberadamente para fines criminales.

Los hechos no están en controversia. Como prueba de cargo declararon tres testigos oculares y dos policías. Uno de los apelantes le propinó golpes a la Sra. Olga Lemoine, dueña del establecimiento, y la obligó a entregarle el dinero que había en caja. Aquéllos, al disponerse a salir, se llevaron como rehén a un niño de 3 años que estaba en el negocio. Mientras tanto, alguien avisó a la policía y estando los apelantes todavía dentro del establecimiento se presentaron cuatro policías. Al salir los apelantes, hubo un tiroteo. Los apelantes resultaron ilesos y huyeron en un carro llevándose al niño. Un policía fue muerto y otro fue herido. Más tarde, la policía encontró el automóvil en que los apelantes huyeron y también al niño.

Los apelantes fueron convictos de asesinato, de dos tentativas de asesinato, de robo, de restricción agravada de libertad y de infringir los Arts. 5, 6, 8 y 8A de la Ley de Armas.

En apelación señalaron dos errores y uno tercero que denominan Señalamiento Adicional.

## I

En el primer señalamiento alegan que las acusaciones de tentativa de asesinato no imputan delito porque no dicen expresamente que el asesinato no se consumó por razones ajenas a la voluntad de los acusados. El señalamiento no tiene mérito. A cada uno de los apelantes se le formularon acusaciones por el delito de tentativa de asesinato y en ellas se les imputa explícitamente que "allá en o para el día 28 de julio de 1978 . . . ilegal, voluntaria y criminalmente, actuando en concierto y de común acuerdo con otro individuo, con malicia premeditada, deliberación, con intención y propósito decidido y firme de matar, demostrando tener un corazón pervertido y maligno, armados de una escopeta y una pistola, acometieron al ser humano Miguel A. Cruz, haciéndole varios disparos *con la intención de matarlo*, sin lograr herirlo". (Énfasis suplido.)

En las otras dos acusaciones por el delito de tentativa de asesinato se les imputó que "allá en o para el día 28 de julio de 1978 . . . ilegal, voluntaria y criminalmente, actuando en concierto y de común acuerdo con otro individuo, con malicia premeditada, deliberación, con intención y propósito decidido y firme de matar, demostrando tener un corazón pervertido y maligno, armados de una escopeta y una pistola, acometieron al ser humano Eugenio Rodríguez Báez, haciéndole varios disparos siendo alcanzado con perdigones en la parte frontal, esto lo hizo *con la intención de matarlo*". (Énfasis suplido.)

Como se sabe, las acusaciones y las denuncias deberán contener una exposición de los hechos esenciales constitutivos del delito redactada en lenguaje sencillo, claro y conciso y de tal modo que pueda entenderla cualquier persona de inteligencia común. Dicha exposición no tendrá que emplear estrictamente las palabras usadas en la ley y podrá emplear

otras que tengan el mismo significado. En ningún caso será necesario expresar en la acusación o denuncia presunciones legales. Las acusaciones y las denuncias deben informar a los acusados de qué se les acusa, pero no es para ello necesario seguir ningún lenguaje estereotipado o técnico o talismánico. Véase la Regla 35 de las de Procedimiento Criminal. Véanse, además, *Pueblo* v. *Santiago Cedeño*, 106 D.P.R. 663, 666–667 (1978); Wright, *Federal Practice and Procedure*, T. 1, sec. 123; *Turf Center, Inc.* v. *United States*, 325 F.2d 793 (9th Cir. 1963); *United States* v. *Markee*, 425 F.2d 1043 (9th Cir. 1970), *cert. den.* 400 U.S. 847; *United States* v. *Cluchette*, 465 F.2d 749, 752–753 (1972); *Wharton's Criminal Procedure*, 12ma ed., 1975, Vol. 2, sec. 286, pág. 114; y a Wright, *Federal Practice and Procedure*, Vol. 1, sec. 125, págs. 231, 236.

█ En el caso de autos, los acusados quedaron debidamente informados de los hechos y de la intención que se les imputaban. El que mataron a un policía e hirieron a otro demuestra claramente la intención de los apelantes al hacer los disparos y que si no hubo más muertes ciertamente no fue por falta de intención de los asaltantes.

## II

En el segundo señalamiento argumentan que la infracción del Art. 5 de la Ley de Armas, 25 L.P.R.A. sec. 415, está confundida (*sic*), queriendo decir integrada o fundida, con la infracción del Art. 8A de dicha Ley, 25 L.P.R.A. sec. 418a. Argumentan que la posesión de la escopeta recortada quedó fundida con la portación de dicha arma. Ya en *Pueblo* v. *Fonseca*, 79 D.P.R. 36 (1956), resolvimos que los delitos de posesión y portación de armas bajo los Arts. 6 y 8 de esa Ley son delitos que pueden cometerse bajo circunstancias distintas que excluyen la posibilidad de fusión de los mismos.

El Art. 8A de la Ley de Armas fue adicionado mediante la Ley Núm. 15 de 30 de octubre de 1975. De la Exposición de

Motivos de dicha Ley surge que el propósito de la enmienda fue aumentar las penalidades relacionadas con la posesión, uso y transportación de las categorías de armas utilizadas por criminales habituales o profesionales. Tales armas incluyen las ametralladoras, las carabinas y las escopetas de cañón recortado. A esos fines, la Ley Núm. 15 aumentó las penalidades a un mínimo de 10 años y un máximo de 25 en los delitos cometidos con esas armas. Las penalidades para ello aparecen en el nuevo Art. 8A de la Ley de Armas, y las penalidades para la mera posesión aparecen en el Art. 39 de dicha Ley, 25 L.P.R.A. sec. 449. Se ve que el legislador ha establecido normas distintas para la portación y para el uso de distintas clases de armas, ya que éstas se utilizan usualmente en crímenes muy distintos.

El propio Art. 43 de la Ley de Armas, 25 L.P.R.A. sec. 453 dispone que:

El proceso y castigo de cualquier persona por cualquiera de los delitos definidos y castigados por este Capítulo no impedirá el proceso y castigo de la misma persona por cualquier otro acto u omisión en violación de cualquiera de las demás disposiciones de este Capítulo, del Código Penal, Título 33, o de cualquiera otra ley.

Se ve claramente que mediante la adición del Art. 8A a la Ley de Armas, adicionado por la Ley Núm. 15 de 30 de octubre de 1975, el legislador ha querido proteger a la ciudadanía de los asaltantes profesionales imponiéndoles castigos más severos a estos delincuentes cuando portan, conducen o transportan ametralladoras, escopetas, rifles, carabinas y escopetas de cañón recortado o cualquier modificación de esas armas. Reconocemos que la potestad legislativa es suficiente para legislar en esa forma en protección del bien común y sostenemos dicha legislación. Tampoco se cometió el segundo señalamiento de error.

## III

En el señalamiento adicional, los apelantes se quejan de que la exposición de la prueba no es suficiente para levantar otros errores y que el tribunal les privó de su derecho de elevar un récord exacto de los procedimientos. En primer lugar, la Exposición Narrativa de la Prueba fue preparada por la propia defensa de los apelantes. A lo que el tribunal se negó fue a que en un documento posterior preparado por la defensa se levantaran las siguientes dos cuestiones. La primera se relaciona con dos noticias publicadas en el periódico *El Vocero*. Sobre éstas, el magistrado, mediante su resolución de 3 de enero de 1980, determinó que luego de ser interrogados los jurados, solamente uno expresó que había leído la referida información de *El Vocero* y que, además, contestó no tener opinión formada sobre los hechos y no haber hablado con los compañeros del jurado sobre los mismos.

En cuanto al segundo planteamiento hecho en dicho señalamiento adicional, se quejan de que el fiscal preguntó al tribunal en alta voz sobre un caso pendiente del acusado Calviño por el delito de fuga. La realidad es que el fiscal lo único que preguntó fue por un número de un caso, sin hacer mención a ningún otro detalle, y se le informó que ese caso no estaba para verse ese día. No se identificó ni al acusado ni el delito. Este breve intercambio no pudo perjudicar a dicho apelante en ninguna forma sustancial, considerando en su totalidad los hechos que presenta este caso.

■ Los apelantes se quejan de que no se les permitió preguntar a los jurados sobre el efecto adverso que pudo haber tenido la información periodística. El error, de haberse cometido, no fue perjudicial en forma que amerite una revocación, ya que el propio magistrado preguntó eso a los jurados y sólo uno contestó en la afirmativa, con los resultados antes dichos. Tampoco fue perjudicial la admisión de la fotografía del niño, ya que con la prueba de los testigos oculares y de los policías que encontraron al niño en el carro que los asaltantes dejaron

abandonado, se probó hasta la saciedad la presencia del niño en el lugar de los hechos.

*No habiéndose cometido los errores señalados, se confirmarán las sentencias apeladas.*

El Juez Asociado Señor Irizarry Yunqué emitió opinión disidente en cuanto al segundo señalamiento de error, a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Dávila. El Juez Asociado Señor Martín concurre en el resultado.

—O—

Opinión disidente en parte del Juez Asociado Señor Irizarry Yunqué a la cual se unen el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 2 de febrero de 1981

Disiento de aquella parte de la opinión de este Tribunal en que se resuelve que el delito de posesión de una escopeta recortada, tipificado en el Art. 5 de la Ley de Armas, 25 L.P.R.A. sec. 415, no está fundido necesariamente en el de portación de dicha arma, definido en el Art. 8A de dicha ley, 25 L.P.R.A. sec. 418a. [1]

---

[1] Dichos artículos disponen como sigue:

Art. 5—*Posesión de ametralladora, carabina o escopeta de cañón cortado.*

"Toda persona que posea o use sin autorización de ley una ametralladora, carabina, o escopeta de cañón cortado así como cualquier modificación de éstas, será culpable de delito grave. Esta sección no será aplicable a la posesión o uso de estas armas en el cumplimiento de sus deberes oficiales por miembros de la Policía, el alcaide, el superintendente o cualquiera de sus auxiliares de cualquier prisión, penitenciaría, cárcel de distrito o municipal, o cualquier otra institución para la detención de personas convictas o acusadas de algún delito o detenidas como testigos en casos criminales, incluyendo alguaciles y alguaciles auxiliares, o cualquiera otros funcionarios del orden público, así como tampoco a la posesión o uso de estas armas por cualquier persona en funciones de su cargo en el servicio de las Fuerzas Armadas de los Estados Unidos en Puerto Rico, o en el servicio de correos, aduanas e inmigración de los Estados Unidos, o en cualquier servicio del Gobierno de Estados Unidos que por la ley de su

El caso de *Pueblo* v. *Fonseca*, 79 D.P.R. 36 (1956), en que se ampara la opinión del Tribunal es inaplicable a la situación que plantean los citados Arts. 5 y 8A. En *Fonseca* el apelante fue convicto de violar los Arts. 6 y 8 de la Ley de Armas, 25 L.P.R.A. secs. 416 y 418, respectivamente, que prohíben, el 6 la posesión y el 8 la portación de una pistola, revólver u otra arma de fuego, "sin tener una licencia para ello expedida". Resolvió este Tribunal, pág. 40, que: "El delito penado por el art. 8 de la ley por la *portación* ilegal de un arma de fuego cargada, es también uno separado y distinto del delito penado por el art. 6 sobre *posesión* ilegal de un arma de fuego. Se consuma bajo circunstancias y normas de ley distintas que excluyen la posibilidad de confusión (*merger*) de los mismos".

No se elaboraron en *Fonseca* las razones para así decidir. Un examen de la Ley de Armas revela, en apoyo de ello, que para obtener una licencia para poseer un arma se requieren razones y trámites distintos a los requeridos para la obtención de una licencia para portar un arma. De tal suerte, una persona puede tener licencia para poseer, pero no para portar un arma, e infringir, por tanto, el Art. 8, pero no el 6 de la Ley de Armas.

La situación es distinta en cuanto se refiere a los Arts. 5 y 8A, pues la ley no contempla la expedición de licencias para poseer o para portar escopetas de cañón cortado. No puedo concebir que una persona porte una cosa sin tener su posesión

---

creación le autorice a usar tales armas, así como tampoco a la posesión por cualquier empresa de transportación mientras éstas las transporte directamente para su entrega en cualquier sitio para uso de los funcionarios o personas anteriormente nombrados."

Art. 8A—*Delito agravado*

"Toda persona que porte, conduzca o transporte, sin autorización de ley, una ametralladora, escopeta, escopeta de cañón cortado, rifle, carabina o cualquier modificación de estas armas será sancionada con pena de reclusión por un término mínimo de 10 años y máximo de 25 años."

En virtud del Art. 39 (25 L.P.R.A. sec. 449) la penalidad para la infracción del Art. 5 es la misma que para el 8A: mínimo de 10 y máximo de 25 años de reclusión.

en el momento de portarla. En consecuencia, el delito de poseer dicha arma forma parte de, y está incluido y necesariamente fundido en el de portarla.

Una comparación de los Arts. 5 y 8A revela que el Art. 5 prohíbe la posesión y uso, mientras que el 8A prohíbe portar, conducir o transportar las armas allí enumeradas, que incluyen la escopeta de cañón recortado. Como el Art. 5 sólo prohíbe la posesión o uso, era necesario añadir el 8A para incluir todas las circunstancias bajo las cuales se podrían utilizar dichas armas prohibidas.

Es de notarse que la violación de dichos artículos es penable de manera idéntica: mínimo de 10 y máximo de 25 años de reclusión. Véanse el escolio 1, *ante*, y el Art. 39 de la Ley de Armas allí citado. El Art. 8A no es, por tanto, un "delito agravado". Hace tan ilegal y punible la portación y transportación de las armas allí mencionadas, como los Arts. 5 y 39 su posesión o uso. Como bajo ninguna circunstancia se puede tener legalmente una escopeta de cañón recortado, no cabe la distinción hecha en *Fonseca* entre la posesión y portación del arma para establecer una base para condenar al aquí apelante de la infracción de los dos artículos como delitos independientes.

Una segunda razón por la cual no es autoridad la decisión de *Fonseca* es que desde *González* v. *Tribunal Superior*, 100 D.P.R. 136 (1971), este Tribunal abandonó la norma de "la misma prueba" y adoptó la norma del "mismo acto u omisión". Al interpretar dicha norma en *Pueblo* v. *Meléndez Cartagena*, 106 D.P.R. 338, 345 (1977), dijimos que ésta incluía "no sólo un acto físico único sino también, en determinadas circunstancias, un curso de acción" y que cuando un delito es un medio necesario para cometer el otro, sólo se impondrá la pena correspondiente al delito más grave. La norma para determinar la existencia del concurso ha sufrido un cambio drástico desde la decisión de *Fonseca* y arroja dudas sobre la

validez actual de dicha decisión, en vista de lo resuelto en *Meléndez Cartagena.*

Las convicciones por posesión y portación ilegal de una escopeta recortada surgen en el caso ante nos de un mismo curso de acción e impulso: el asalto del colmado "Tu Amigo". Según señalamos antes, para poder portar una escopeta de ese tipo se requiere como medio necesario para la comisión de dicho delito su posesión ilegal. De manera que al recaer una convicción por portación ilegal se impide una condena por posesión, pues el delito de posesión se funde con el de portación. Sin embargo, la mera posesión no necesariamente implica una portación o transportación ilegal y es, en este aspecto, que se requiere la enumeración de todas las circunstancias en que se prohíbe el *uso* de dichas armas.

En conclusión, estimo que una violación de los Arts. 5 y 8A que ocurra durante un mismo curso de acción o impulso, no puede castigarse separadamente bajo ambos Arts. 5 y 8A. Puede acusarse por portación y recaer un fallo bajo el Art. 8A y, en circunstancias en que la portación no se prueba, recaer un fallo bajo el Art. 5 si se prueba el uso o la posesión ilegal. De acusarse bajo ambos artículos, solamente podrá castigarse bajo uno de ellos, no bajo ambos.

En cuanto a la aplicabilidad del Art. 43 de la Ley de Armas, 25 L.P.R.A. sec. 453, citado en la opinión de este Tribunal, [2] baste señalar que ninguna ley puede contravenir derechos constitucionales. Reconocimos en *González* v. *Tribunal Superior*, supra, pág. 140, que el Art. 44 del entonces vigente Código Penal, adoptado en el Código Penal de 1974 como Art. 63 (33 L.P.R.A. sec. 3321) [3] "tiene un alcance

---

[2] Dice así:

"El proceso y castigo de cualquier persona por cualquiera de los delitos definidos y castigados por este Capítulo no impedirá el proceso y castigo de la misma persona por cualquier otro acto u omisión en violación de cualquiera de las demás disposiciones de este Capítulo, del Código Penal, Título 33, o de cualquiera otra ley."

[3] Dispone dicho artículo:

mayor que el de proteger a un acusado de la doble exposición que veda la Constitución del Estado Libre Asociado, sino que lo protege de que por un solo acto punible se le castigue más de una vez".

De estar ante una situación de concurso de delitos no se podría interpretar el Art. 43 de la Ley de Armas para permitir que se castigue al apelante por dos delitos —posesión y portación de la escopeta recortada— que ocurrieron simultáneamente como parte de un mismo acto o evento. De ser ése el alcance del Art. 43 —permitir sentencias por ambos delitos— sería inconstitucional bajo el razonamiento de *González v. Tribunal Superior*.

Considero, por las razones expuestas, que se cometió el segundo error y que no procedía la convicción y condena, como delitos separados, bajo los Arts. 5 y 8A de la Ley de Armas.

---

"Salvo lo dispuesto en la sección siguiente, un acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá castigarse con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una.

"La absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás."